UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAMON ROBLES,                        :
                                     :   Civil Action No. 07-1026 (JBS)
              Plaintiff,             :
                                     :
         v.                          :   **OPINION**
                                     :
MR. L. ALBINO, et al.,               :
                                     :
              Defendants.            :


**APPEARANCES:**

Plaintiff <u>pro se</u>
Ramon Robles
Northern State Prison
168 Frontage Road
P.O. Box 2300
Newark, NJ 07114


**SIMANDLE**, District Judge

       Plaintiff Ramon Robles, a prisoner confined at Northern

State Prison in Newark, New Jersey, seeks to bring this action <u>in</u>

<u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations

of his constitutional rights.  Based on his affidavit of

indigence and the absence of three qualifying dismissals within

28 U.S.C. §1915(g), the Court will grant Plaintiff's application

to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and

will order the Clerk of the Court to file the Complaint.[1]

_____

       [1] This Court previously administratively terminated this
matter based upon Plaintiff's failure to submit a complete
application for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> with copies of
his institutional account statements as required by 28 U.S.C.
§ 1915(a)(2).  Based upon Plaintiff's submission of a complete
application, with account statements, and the absence of three

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

In August 2005, Plaintiff was confined at the Garden State Youth Correctional Facility, when a fight broke out involving approximately 34 inmates.  Based on a videotape recording of the incident, Plaintiff was identified as a participant in the incident and was charged with "conduct [that] disrupts or interferes with the security or orderly running of the correctional facility," N.J.A.C. 10A:4-4.1(a)*.306, and participation "in an activity, related to a security threat group," N.J.A.C. 10A:4-4.1(a)*.010.  Plaintiff was found guilty of both offenses and the hearing officer imposed sanctions including 15 days detention with credit for time served, 365 days administrative segregation, 365 days loss of commutation time,

---

qualifying dismissals within 28 U.S.C. §1915(g), this Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the Court to re-open this matter and to file the Complaint.

and 180 days loss of recreation privileges.  Instead of moving to a halfway house as previously scheduled, Plaintiff was transferred to the Northern State Prison gang unit administrative segregation wing.  Plaintiff describes conditions there as including solitary confinement "24/7," no television or music, telephone use only once every three days, and restrictions on showers and recreation.

Plaintiff pursued administrative appeals and ultimately appealed to the Superior Court of New Jersey, Appellate Division.[2]  In his appeal, Plaintiff contended that the hearing officer's refusal to allow him to examine the videotaped recording of the incident violated his due process rights.  The Department of Corrections countered that the videotape was confidential because disclosure would allow inmates to discover aspects of the prison's security system.  Finding that the videotape evidence was "particularly crucial here, as there was no corroborating testimony by anyone who had personally observed [Plaintiff] doing anything wrong," the Appellate Division rejected the Department of Corrections' "generalized confidentiality assertion" and remanded the matter for further administrative proceedings.  Specifically, the Appellate Division held:

---

[2] Plaintiff has attached to his Complaint a copy of the Opinion of the Appellate Division.

3

> Accordingly, to comply with administrative
> fairness, we remand this matter to the Department for
> reconsideration of its finding that security concerns
> require this particular videotape to remain
> confidential.  On remand, the hearing officer should
> make further findings specifically justifying any need
> for confidentiality of this videotape.  The record
> below reflects little information about any security
> camera and its capacity, placement, or working mode,
> beyond revealing that two officers apparently began
> filming the fight after it started, the videotape(s)
> included an audio component, and the Senior Correction
> Officer's disciplinary report referred to the tape(s)
> as "Tower videotapes."

(Opinion of Appellate Division at 5(Nov. 6, 2006) (citation omitted).)

Plaintiff received a new hearing in January 2007.  As a result of the new hearing, the administrative segregation sanction on the *306 charge (conduct that disrupts or interferes with the security or orderly running of the correctional facility) was reduced from 365 days to 180 days.  The findings and sanctions otherwise remained unchanged.  (Complaint, Ex. A5.)

Plaintiff seeks damages for the 185 days he spent in administrative segregation over and above the ultimate 180-day sanction imposed at the second hearing.  Plaintiff names as defendants the Garden State Youth Correctional Facility, Administrator L. Albino, Courtline Officer B. Makarski, and Commissioner Devon Brown.

The Court construes the Complaint as asserting a claim for deprivation of liberty without due process.

4

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in</u> <u>forma</u> <u>pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in</u> <u>forma</u> <u>pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a

complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).


III.  ANALYSIS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other
proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

A.   Respondeat Superior Liability

     Local government units and supervisors are not liable under
§ 1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.
New York City Department of Social Services, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); Natale v.
Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d
Cir. 2003).  "A defendant in a civil rights action must have
personal involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence."  Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations

omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).  As the claim against Commissioner Devon Brown appears to be based solely on a theory of respondeat superior, it is subject to dismissal on this ground alone.

B.   The Eleventh Amendment

In addition, the claim against the Garden State Youth Correctional Facility is barred by the Eleventh Amendment.  The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections and state prison are arms of the state for Eleventh Amendment purposes and are not persons under § 1983).

For the foregoing reasons, all damages claims against the Garden State Youth Correctional Facility and against the defendants in their official capacities must be dismissed with prejudice.

C.   The Due Process Claim

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the

9

prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485 (upholding prisoner's sentence of 30 days' disciplinary segregation following a hearing at which he was not permitted to produce witnesses). See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

10

States, however, may confer on prisoners liberty interests
that are protected by the Due Process Clause.  "But these
interests will be generally limited to freedom from restraint
which, while not exceeding the sentence in such an unexpected
manner as to give rise to protection by the Due Process Clause of
its own force, nonetheless imposes atypical and significant
hardship on the inmate in relation to the ordinary incidents of
prison life."  Sandin, 515 U.S. at 484 (finding that disciplinary
segregation conditions which effectively mirrored those of
administrative segregation and protective custody were not
"atypical and significant hardships" in which a state conceivably
might create liberty interest).  See also Asquith, 186 F.3d at
411-12 (return to prison from halfway house did not impose
"atypical and significant hardship" on prisoner and, thus, did
not deprive him of protected liberty interest).  In Griffin v.
Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals
for the Third Circuit held that a 15-month confinement in
administrative custody did not impose "atypical and significant
hardship," even in the face of state regulation requiring release
to the general population after 20 days in the absence of a
misconduct charge.  The Court of Appeals did note, however, that
if an inmate is committed to undesirable conditions for an
atypical period of time in violation of state law, that is a
factor to be considered in determining whether the prisoner has

11

been subjected to "atypical and significant hardship" triggering due process protection.  Id.

It is clear that an allegation of confinement to segregation, without more, is not sufficient to state a claim for deprivation of a constitutionally-protected liberty interest. See, e.g., Smith v. Mensinger, 293, F.3d 641, 653 (3d Cir. 2002) ("[I]t is now clear that the sanction Smith challenges (seven months disciplinary confinement) does not, on its own, violate a protected liberty interest as defined in Sandin."). Here, however, Plaintiff alleges that the conditions in which he was confined differed substantially from those of the general prison population. Accordingly, the allegations are sufficient to trigger the Sandin inquiry as to whether the conditions impose an "atypical and significant hardship." "In deciding whether a protected liberty interest exists under Sandin, we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)). The facts alleged are not sufficient to permit this Court to determine, on the basis of the pleading, whether the conditions alleged amount to an "atypical and significant hardship," and, thus, whether Plaintiff ultimately can establish a liberty interest in avoiding disciplinary confinement.

Even if Plaintiff can establish a liberty interest in avoiding disciplinary confinement, he can succeed on a due process claim only by establishing that he was deprived of that liberty interest without due process. A prisoner is entitled to an impartial disciplinary tribunal, Wolff v. McDonnell, 418 U.S. 539, 570-71 (1974), excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of a liberty interest with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[3] and (3) a written

---

[3] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing. To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. See Ponte v. Real, 471 U.S. 491 (1985). "{P}rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals. ... [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.  <u>Wolff</u>, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings.  <u>Id.</u> at 569-70.  Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member.  <u>Id.</u> at 570.

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of a liberty interest, must be supported by "some evidence" in the record. <u>Superintendent, Massachusetts Correctional Institution at Wolpole</u> <u>v. Hill</u>, 472 U.S. 445, 454-56 (1985).  It is this last requirement, only, that is implicated by the allegations of Plaintiff's Complaint.  The allegation that the only evidence suggesting guilt was a videotape, and Plaintiff's further allegations that the videotape was exculpatory and that he was not permitted to view it, are sufficient to avoid dismissal at this screening stage of the litigation.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Due Process claim may proceed as against Administrator L. Albino and Courtline Officer B. Makarski, in their individual capacities.  All other claims will be dismissed.   An appropriate order follows.


**_s/ Jerome B. Simandle_**
Jerome B. Simandle
United States District Judge


Dated:  **June 19, 2007**