[relates to Docket Item 14]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMON ROBLES,<br><br>               Plaintiff,<br>   v.<br><br>MR. L. ALBINO and B. MAKARSKI,<br><br>               Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil Action<br>No. 07-01026 (JBS)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE**, District Judge:

    In this action, pro se plaintiff Ramon Robles ("Plaintiff")[1] seeks recovery under 42 U.S.C. § 1983 for the violation of his civil rights, claiming that he was denied his Fourteenth Amendment right to Due Process of law when he was found guilty of committing two disciplinary infractions at the Garden State Youth Correctional Facility ("GSYCF") and placed in Administrative Segregation based on insufficient evidence. Specifically, he claims that he did not engage in the challenged conduct and further avers that the videotape relied upon by the prison officials as evidence of his guilt was exculpatory. This matter comes before the Court upon the motion for summary judgment of

---

[1] Plaintiff is a former Northern State Prison ("NSP") inmate who was paroled from NSP on or about July 26, 2007. (Decl. of Mario Viera, hereinafter "Viera Decl." at 2.)

Defendants Charles E. Albino[2] and Robert Makarski (hereafter "Defendants") pursuant to Fed. R. Civ. P. 56(c) [Docket Item No. 14]. Plaintiff failed to oppose the Defendants' motion, which will be granted for the following reasons:

**THE COURT FINDS** as follows:

1. On August 11, 2005, while Plaintiff was incarcerated at GSYCF, he was charged pursuant to N.J.A.C. 10A:4-4.1 with committing prohibited act *.306, "conduct which disrupts or interferes with the security or orderly running of the institution," and prohibited act *.010, "participating in an activity related to a security threat group." (Viera Decl. Ex. A at 1, 6.)

2. On August 18, 2005, a hearing was held before defendant Makarski, a Disciplinary Hearing Officer, who adjudicated Plaintiff guilty of committing prohibited acts *.010 and *.306. (Viera Decl. Ex. A at 5, 10.)

3. Among the evidence that defendant Makarski relied upon in finding Plaintiff guilty of committing prohibited acts *.010 and *.306 was a videotape of Plaintiff participating in an assault by the prison gang known as the "Bloods" against another prison gang known as the "Muslims." (Viera Decl. Ex. A at 8-10.)

---

[2] Charles Albino is mis-identified in the complaint as "L. Albino." (Defs.' Br. at 4.)

4. According to Makarski's reports from Plaintiff's hearings, the videotape shows Plaintiff standing on the top of the hill in the prison yard, and then, after receiving a signal, racing down the hill with other inmates towards the basketball courts.  Although the camera is not focused on Plaintiff for the entire event, Makarski reports that Plaintiff is seen in the tape with clenched fists and "taking a fight stance."  Plaintiff was also seen "as part of a large group/gang/mob running around people of the smaller group allowing others to attack them."  Plaintiff's housing officer reviewed the tape and reported that Plaintiff took part in the disruption.  (Viera Decl. Ex. A-23.)

5. Plaintiff was not permitted to view the videotape at the August 18, 2005 hearing, because defendant Makarski deemed that it was confidential in that it would allow Plaintiff and his counsel substitute ("c/s") to discover camera angles, locations or blind spots in the prison yard security system.  (Viera Decl. Ex. A-21.)

6. Upon finding Plaintiff guilty of committing the two disciplinary infractions, defendant Makarski combined the sanctions for the two charges and recommended that Robles receive 15 days in Detention (with credit for time served), 365 days' Administrative Segregation, 365 days' loss of

       commutation time and 180 days' loss of recreation privileges.  (Viera Decl. Ex. A at 5, 10.)

7. On August 18, 2005, Plaintiff administratively appealed the charges to the prison Administrator.  (Compl. Ex. A-1.)

8. On August 22, 2005 GSYCF Assistant Superintendent L. Wallace upheld the guilty findings and the resulting sanctions.  (Compl. Ex. A-2.)

9. Plaintiff filed an appeal of the Department's guilty findings and resulting sanctions to the Appellate Division of the Superior Court of New Jersey, which was docketed as <u>Ramon Robles v. New Jersey Department of Corrections</u>, docket no. A-2564-05T3.  (Compl. Ex. A-3.)

10. On November 6, 2006, the Appellate Division issued a published opinion in <u>Ramon Robles v. New Jersey Department of Corrections</u>, wherein the court held that the Department of Corrections's justification for its decision to designate the videotape as confidential, and thereby preclude Plaintiff from seeing the video, lacked sufficient evidence in the record.  (Compl. Ex. A-4.)

11. The Appellate Division remanded <u>Ramon Robles v. New Jersey Department of Corrections</u>, so that the Department of Corrections could provide Robles with a rehearing of the *.010 and *.306 charges, at which time the Department had to either provide a stronger justification for keeping the

   videotape confidential, or permit Plaintiff to view the videotape.  (Compl. Ex. A-4.)

12. On December 29, 2006, pursuant to the Appellate Divisions's remand, the re-hearing of disciplinary infractions was scheduled, but was postponed because Disciplinary Hearing Officer Osvart needed to obtain a copy of the noted videotape.  (Viera Decl. Ex. B at AA-1.)

13. Thereafter, the re-hearing date was postponed an additional five times to allow for both the Hearing Officer and Plaintiff's counsel substitute to prepare.  (Viera Decl. Ex. B at AA-1.)

14. On January 12, 2007, the Hearing Officer twice showed both Plaintiff and his counsel substitute the noted videotape of the incident which resulted in Plaintiff receiving the *.010 and *.306 charges.  (Viera Decl. Ex. B at AA-1.)

15. On January 30, 2007, the re-hearing resumed, at which time Plaintiff, who had twice viewed the videotape eighteen days earlier, pled guilty to both the *.010 and *.306 charges.  (Viera Decl. Ex. B at 1, 4.)

16. On January 30, 2007, at the re-hearing, Plaintiff did not make a statement with respect to the *.010 charge, but with respect to the *.306 charge Plaintiff stated, "I made a mistake.  I should not [have] taken part in this.  I'm sorry."  (Viera Decl. Ex. B at 2, 5.)

17. Based upon Plaintiff's guilty plea and his acknowledgment that he participated in an assault on the "Muslims" in the yard at GSYCF on August 11, 2005, Hearing Officer Osvart found Plaintiff guilty of both the *.010 and *.306 charges. (Viera Decl. Ex. B at 3, 6.)

18. Upon finding Plaintiff guilty at the re-hearing of the *.010 and *.306 charges, Hearing Officer Osvart re-imposed the original sanctions, except he modified the Administrative Segregation from 365 days to 180 days. (Viera Decl. Ex. B at AA-2.)

19. On March 1, 2007, Plaintiff filed the instant action in the United States District Court for the District of New Jersey, pursuant to 42 U.S.C. § 1983 alleging violations of his federal civil rights. (Compl. 1-8.)  His complaint alleged that his Due Process rights were violated when he was placed in Administrative Segregation after being found guilty of engaging in two disciplinary infractions, because the findings were based on insufficient evidence that he had in fact taken part in the event in question. (Id. at 6-7.)

20. On August 7, 2007 Defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56(c). [Docket Item No. 14]. Plaintiff did not oppose the motion, nor did he request that the Court grant him additional time to file a response.

21. In granting a motion for summary judgment, a court must determine that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Abraham v. Raso, 183. F.3d 279, 287 (3d. Cir. 1999) (citing Fed. R. Civ. P. 56(c)).  An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it influences the outcome of the suit under the applicable law.  Id. at 248.  A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus., Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the non-moving party fails to oppose the motion by evidence such as written objection, memorandum, or affidavits, the court "will accept as true all material facts set forth by the moving party with appropriate record support." Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d. Cir. 1989).  Even if the nonmoving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate," and only if movants are

      entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(e); <u>see</u> <u>Anchorage Assocs</u>., 922 F.2d at 175.

22. A liberty interest protected by the Due Process Clause may arise from either the Due Process Clause itself or State law. <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Dpt. of Corrections</u>, 186. F.3d 407, 409 (3d. Cir. 1999). While incarceration does not remove prisoners from the ambit of the Due Process Clause, it is well recognized that prisoners' liberty interests are curtailed in favor of allowing prison officials broad discretionary authority over the institutions they manage.  <u>See</u> <u>Hewitt</u>, 459 U.S. at 467. Provided that "the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him, and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  <u>Hewitt</u>, 459 U.S. at 468, (<u>quoting</u> <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976)). The Court in <u>Sandin v. Conner</u> elaborated on this by explaining that "discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." 515 U.S. 472, 485 (1995).

23. While states may confer liberty interests that are protected by the Due Process Clause upon prisoners, such interests are "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. In Hewitt, for instance, the Court concluded that administrative segregation is the type of confinement to which prisoners should reasonably expect to be subjected to during the course of their prison term, and therefore generally cannot be said to be atypical. Hewitt, 459 U.S. at 869-70; see also Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which were essentially the same as the conditions present in administrative segregation and protective custody were not "atypical and significant hardships").  While an allegation of confinement to segregation, without more, is insufficient to state a claim for deprivation of a liberty interest, see Smith v. Mensinger, 293 F.3d 641, 563 (3d. Cir. 2002), factors "such as the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions" should be considered in determining whether there has been an undue restraint on liberty. Mitchell v. Horn, 318 F.3d 523, 532 (3d. Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d. Cir. 2000)).

24. For the purposes of Plaintiff's complaint, this Court will assume, without deciding, that Plaintiff has a liberty interest in avoiding unreasonable disciplinary confinement. However, this Court finds that since there is sufficient evidence in the record to support the prison officials' findings of guilt, Plaintiff has not been deprived of his liberty without due process of law.

25. If an identified interest is a liberty interest within the meaning of the Due Process Clause, then it cannot be denied without due process of law. To comply with the requirements of the Fourteenth Amendment's Due Process Clause, prison officials must provide a prisoner facing a loss of a liberty interest with 1) written notice of the disciplinary charges prior to the hearing, 2) an opportunity to call witnesses and present documentary evidence when doing so will not compromise the institutional safety and correctional goals of the detention facility and 3) a written statement of the evidence relied upon by the fact finder, as well as the reasons for the disciplinary action. Wolf v. McDonnell, 418 U.S. 539, 563-67 (1974). In addition, the Due Process clause requires that the findings of a prison official which result in the loss of a liberty interest must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Walpole v. Hill,

    472 U.S. 445, 455 (1985). This is not an overly stringent standard, but rather merely requires that there be evidence in the record that could support the conclusion reached by the disciplinary board. Id. at 455-56.

26. Accepting as true all material facts set forth by the Defendants, no reasonable jury could find that Plaintiff has proven that his liberty interest was deprived without due process of law. The prison officials satisfactorily complied with the three requirements set forth in Wolf in providing the necessary process to the Plaintiff. Plaintiff was given written notice of the charges brought against him. (Viera Decl. Ex. A at 1-2, 6-7.) He was also given an opportunity to call witnesses and present evidence, although he declined to do so. (Viera Decl. Ex. B at 1-6.) Finally, prison officials provided Plaintiff with a written statement of the evidence relied upon and the reasons for the disciplinary action ultimately taken. (Id.)

27. The Plaintiff alleges he was denied due process when he was placed in Administrative Segregation after being found guilty of two disciplinary infractions he denies having committed. (Compl. at 6-7.) Plaintiff further alleges that the videotape, which was the only evidence of his guilt, was exculpatory. (Id.) Plaintiff is thus challenging the

sufficiency of the evidence relied on by the prison officials in charging him with the two infractions.  Contrary to these allegations, the record demonstrates that after viewing the video, several prison officials, including Plaintiff's housing officer, clearly identified Plaintiff as one of the inmates involved in the fight. (Viera Decl. Ex. A-23 and Ex. B at AA-2.)  Although it is conceded that the videotape is not focused on Plaintiff during the entire event, he was clearly seen running down the hill towards the basketball courts with other inmates when the signal was given to begin fighting.  (Viera Decl. Ex. A-23.)  Plaintiff was also described as moving with the mob of inmates and seen "with clenched fists, taking a fight stance." (Id.)  The sufficiency of the evidence is further bolstered by Plaintiff's own guilty plea after viewing the videotape at his hearing, as well as his statements of remorse for participating in the disruption.  (Viera Decl. Ex. B at 1-5.)  With respect to the *.306 charge, Plaintiff stated, "I made a mistake.  I should not [have] taken part in this. I'm sorry."  (Viera Decl. Ex. B at 5.)  Thus, contrary to Plaintiff's allegations, there is sufficient evidence in the record, as required by Walpole, to support Plaintiff being found guilty of committing the two disciplinary infractions

12

      that resulted in his Administrative Segregation placement Therefore, Plaintiff's Fourteenth Amendment right to Due Process of law was not violated, and Defendants' motion for summary judgment should be granted.

28. For the foregoing reasons, Defendants' motion for summary judgment will be granted and the accompanying Order will be entered.

**November 29, 2007**                                       **s/ Jerome B. Simandle**
Date                                                             JEROME B. SIMANDLE
                                                                     U.S. District Judge